

**U.S. Department of Justice**

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

August 9, 2005

**Via FedEx and Facsimile (303-713-6216)**
J. Triplett Mackintosh, Esq.
Holland & Hart, LLP
555 17th Street, Suite 3200
Denver, CO 80202-3979

Re:  LPPAI, LTD., doing business as PA, Inc.

Dear Mr. Mackintosh:

This letter sets forth the plea agreement that this Office is willing to enter into with your client, LPPAI, LTD., doing business as PA, Inc. **This plea offer expires on Friday, August 19, 2005.** If your client accepts the terms and conditions of this offer, please have an authorized representative of your client execute this document in the space provided below and return it to me. Please include a notarized copy of the partnership resolution which states that your client has authorized this plea agreement and has empowered you, J. Triplett Mackintosh, Esq., as its outside counsel to act on its behalf for purposes of this plea. Upon my receipt of this document (along with the aforementioned partnership resolution), this letter will become the plea agreement. The terms of the agreement are as follows:

1. **Charges**. Your client agrees to waive indictment and enter a plea of guilty to Count One of a one-count Criminal Information, to be filed in the United States District Court for the District of Columbia, charging your client with willfully attempting to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, and the relevant provisions of the Iranian Transactions Regulations, 31 C.F.R. Part 560, and the Export Administration Regulations, 15 C.F.R. Parts 746 and 764. A copy of the Information is attached. Your client agrees to appear before the Court through an authorized representative and to admit its guilt to the offense charged in the Information, accept the attached factual proffer as the basis for its admission of guilt, and admit these facts when its plea is entered before the Court.

2. **Potential penalties and assessments**. Your client, as a corporate violator, understands that for Count One, pursuant to 18 U.S.C. § 3571(c)(3), the maximum penalty could be a criminal fine of $500,000. Your client is also subject to a term of corporate probation of 5 years pursuant to 18 U.S.C. § 3561. In addition, your client agrees to pay a special assessment of $400 to the Clerk of

the United States District Court prior to the date of sentencing.

3. **Additional charges.** In consideration and as an express condition of the corporate plea, no additional criminal charges will be filed, in connection with the conduct giving rise to this plea agreement, against LPPAI, LTD. or against any former or current partners, directors, officers or employees of LPPAI, LTD.

4. **Waiver of constitutional and statutory rights.** Your client understands that by pleading guilty in this case, your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute, including: the right to be indicted by a grand jury; the right to plead not guilty; and the right to a jury trial. At a jury trial, your client would have the right to be represented by counsel, to confront and cross-examine witnesses against your client, to compel witnesses to appear to testify and present other evidence on your client's behalf. Your client would further have the right to have the jury instructed that your client is presumed innocent until proven guilty, and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt. If your client were found guilty after a trial, your client would have the right to appeal the conviction.

Your client also understands that as part of the entry of this guilty plea, your client specifically waives any rights to a speedy trial or sentence under the Constitution and/or the Speedy Trial Act, 18 U.S.C. § 3161 et seq. Your client acknowledges that sentencing in this case may, with the approval of the Court, be delayed until any cooperation your client may or will be providing to the government has been completed, as determined by the government, so that the Court will have the benefit of all relevant information.

Your client waives any challenges to venue or jurisdiction in the District of Columbia.

5. **Sentencing Guidelines.** The parties to this agreement agree that your client's sentence is not governed by the United States Sentencing Guidelines. That is because, although the offense conduct to which your client is pleading guilty is covered by § 2M5.1(a), that Guideline is not listed under § 8C2.1 which governs fines for organizations. Accordingly, pursuant to § 8C2.10, the sentence is to be determined by applying 18 U.S.C. §§ 3553 and 3572.

If the Guidelines were to apply, the Base Offense Level for the IEEPA violation would be 26 under § 2M5.1(a)(1). Under § 8C2.4(d), the Base fine would be $3,700,000. Under § 8C2.5, a culpability score of 5 would be applicable, calculated as follows: 5 points under (a), plus 1 point under (b)(5), minus 1 point under (g)(3). The Guidelines range would be, therefore, between $3,700,000 and $7,400,000.

6. **Plea Pursuant to Rule 11(c)(1)(C)** Your client and the government agree that a criminal fine of $50,000 and corporate probation of three years, is the appropriate sentence for the offense to which your client is pleading guilty. The parties agree that $50,000 is the appropriate criminal fine in resolution of this matter, taking into account the inapplicability of the Guidelines, the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the

offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes; and in recognition of the civil fine that will be paid and other civil sanctions that will be imposed. 18 U.S.C. § 3553(a)(1). The criminal fine shall be paid by cashier's check or certified check made payable to "Clerk, United States District Court for the District of Columbia" in two equal annual installments: the first payment shall be made within thirty (30) days of the entry of your client's guilty plea, and the second payment shall be made no later than June 30, 2006.

In addition to any other conditions of probation that the United States Probation Office may propose and/or the Court may impose, your client and the government further agree that the following conditions of corporate probation are appropriate in this case and your client agrees to abide by them: (1) your client shall pay the sums set forth in this agreement; (2) at the direction of outside counsel, your client shall conduct semi-annual audits of its compliance with United States export control laws and disclose the results of those audits to the Department of Commerce, Bureau of Industry and Security, Houston Resident Office, upon completion of the audits; (3) your client's current Compliance Officer (Sandford G. Baum), its current Compliance Administrators (Helen Hensley and Wesley Hardy), and any other partners, officers, directors, and/or employees so designated shall each attend training in export control laws sponsored by the Department of Commerce, Bureau of Industry and Security, within one year of the entry of your client's guilty plea; and (4) pursuant to 18 U.S.C. § 3563(a)(1), your client shall not commit any federal, state or local crimes during the term of probation.

The government also agrees, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to present this plea agreement between the parties to the Court for its approval. If the Court accepts the plea agreement and the specific sentence agreed upon by the parties, then the Court will embody in the judgment and sentence the disposition provided for in this plea agreement, pursuant to Rule 11(c)(4) of the Federal Rules of Criminal Procedure. The parties understand, however, that in light of other factors the Court may not agree that such a sentence is an appropriate one and may reject the plea agreement pursuant to Rule 11(c)(5) of the Federal Rules of Criminal Procedure. Your client understands that if this happens, the Court, in accordance with the requirements of Rule 11(c)(5), will inform the parties of its rejection of the plea agreement, and will afford your client an opportunity to withdraw the plea, or if your client persists in the guilty plea will inform your client that a final disposition may be less favorable to your client than that contemplated by this agreement.

7. **Cooperation with the United States**. Your client agrees to cooperate fully, completely, and truthfully with all investigators and attorneys of the United States, by truthfully providing all information in your client's possession relating directly or indirectly to all criminal activity and related matters which concern the subject matter of this investigation or relating to other matters deemed relevant by the United States. Subject to the terms of this agreement, current partners, officers, directors, and employees will be made available for testimony; and contact information for former partners, officers, directors, and employees will be provided, and they will be encouraged to cooperate. This cooperation may include, but is not limited to, submitting to interviews; answering interrogatories; giving sworn written statements; providing documents and any other evidence in your client's possession; giving testimony; giving depositions; and taking government administered

polygraph examination(s).

Your client shall provide testimony that is full and truthful before any Grand Jury in the District of Columbia, and elsewhere, and at all trials of cases or other court proceedings in the District of Columbia and elsewhere, at which such testimony may be deemed relevant by the United States.

Your client shall promptly turn over to the government or other law enforcement authorities or direct such law enforcement authorities to any and all evidence of crime.

Your client agrees not to commit any criminal violation of local, state or federal law during the period of your client's cooperation with law enforcement authorities pursuant to this agreement or at any time prior to the sentencing in this case. The commission of a criminal offense during the period of your client's cooperation or at any time prior to sentencing will constitute a breach of this plea agreement and will relieve the government of all of its obligations under this agreement. However, your client acknowledges and agrees that such a breach of this agreement will not entitle your client to withdraw your client's plea of guilty. Your client further understands that, to establish a breach of this agreement, the government need only prove your client's commission of a criminal offense by a preponderance of the evidence.

8. **Reservation of allocution.** Your client understands that the United States reserves its full right of allocution for purposes of sentencing in this matter in the event the court rejects the plea agreement pursuant to Rule (c)(5) of the Federal Rules of Criminal Procedure or your client withdraws its plea. In such an event, the United States reserves its right to recommend a fine up to the maximum fine allowable by law. The United States reserves the right to describe fully, both orally and in writing, to the sentencing judge the nature and seriousness of your client's misconduct, including misconduct not described in the charge to which your client is pleading guilty. The United States also reserves the right to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this plea agreement.

9. **Breach of agreement**. Your client understands and agrees that if your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this plea agreement, or commits any further crimes, your client will have breached this plea agreement. In the event of such a breach, (a) the United States will be free from its obligations under the agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client shall be fully subject to criminal prosecution for any other crimes which your client has committed or might commit, if any, including perjury and obstruction of justice; and (d) the United States will be free to use against your client, directly and indirectly, in any criminal or civil proceeding all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this agreement or during the course of any debriefings conducted in anticipation of, or after entry of this agreement, including your client's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Your client acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights which arise under these rules. As a result of this waiver, your client understands and agrees that any statements which are made in the course of your client's guilty plea or in connection with your client's cooperation pursuant to this plea agreement will be admissible against your client for any purpose in any criminal or civil proceeding if your client breaches this plea agreement or your client's guilty plea is subsequently withdrawn. Moreover, in the event that your client's guilty plea is withdrawn, your client agrees that the United States will be free to use against your client in any criminal or civil proceeding any statements made during the course of any debriefing conducted in this case, regardless of whether those debriefings were previously covered by an "off the record" agreement by the parties.

If your client breaches this plea agreement, any prosecutions of your client not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement may be commenced against your client in accordance with this paragraph, notwithstanding the running of the statute of limitations before the commencement of such prosecutions. Your client knowingly and voluntarily agrees to waive any and all defenses based on any statute of limitations for any prosecutions commenced pursuant to the provisions of this paragraph.

Your client understands and agrees that the United States shall only be required to prove a breach of this plea agreement by a preponderance of the evidence. Your client further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by preponderance of the evidence in order to establish a breach of this plea agreement.

Nothing in this agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this agreement or committed by your client after the execution of this agreement. Your client understands and agrees that the United States reserves the right to prosecute him/her for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this agreement shall constitute a breach of this agreement. However, in the event of such a breach, your client will not be allowed to withdraw this guilty plea.

10. **Prosecution by other agencies/jurisdictions**. This agreement only binds the United States Attorney's Office for the District of Columbia. It does not bind any other United States Attorney's Office or any other office or agency of the United States government, including, but not limited to, the Tax Division of the United States Department of Justice; the Internal Revenue Service of the United States Department of the Treasury; or any state or local prosecutor. These individuals, and agencies remain free to prosecute your client for any offense(s) committed within their respective jurisdictions. The United States Attorney's Office for the District of Columbia agrees to contact any prosecuting jurisdiction and advise that jurisdiction of the terms of this agreement and the cooperation provided by your client.

Your client further agrees not to contest the administrative forfeiture by the United States

-5-

Department of Homeland Security, Customs and Border Protection, of the specialty alloy pipes seized in this investigation (CBP seizure case number 2004-5301-000074).

There is a separate agreement between your client and the Department of Commerce regarding disposition of certain civil claims against your client which are attached. Your client has separately agreed with the Department of Commerce to settle its civil liability with, among other conditions, a fine which is set forth in that attached agreement.

11. **No other agreements**. No other agreements, promises, understandings, or representations have been made by the parties other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, your client's counsel, and an Assistant United States Attorney for the District of Columbia, or made by the parties on the record before the Court.

If your client agrees to the conditions set forth in this letter, both your client and you should sign the original in the spaces provided below, initial every page of this agreement, and return the executed plea agreement to me. The original of this plea agreement will be filed with the Court.

Sincerely,

KENNETH L. WAINSTEIN
United States Attorney

Jonathan M. Malis
Assistant United States Attorney

### Defendant's Agreement

I am the registered agent of LPPAI, LTD., a Texas limited partnership. I am also the Managing Member and President of GPPAI, LLC, a Texas limited liability company which is the sole general partner of LPPAI, LTD. I am authorized by LPPAI, LTD., to act on its behalf in this matter. Additionally, in February 2004, I was the President of PA, Inc., and owned 75% of all outstanding stocks and shares of PA, Inc.

I have read this plea agreement and carefully reviewed every part of it with the partnership's attorney, J. Triplett Mackintosh. I am fully satisfied with the legal services provided by Mr. Mackintosh in connection with this plea agreement and all matters relating to it. I fully understand this plea agreement and voluntarily agree to it. No threats have been made to me or LPPAI, LTD., nor am I under the influence of anything that could impede my ability to understand this plea agreement fully. No agreements, promises, understandings, or representations have been made with, to, or for me or LPPAI, LTD., other than those set forth above.

LPPAI, LTD., a Texas limited partnership

5/12/05
Date

By:    Sandford G. Baum, in his capacity as
       Registered Agent of LPPAI, LTD., acting as the
       Managing Member and President of GPPAI, LLC.,
       acting as the sole general partner of LPPAI, LTD.

### Attorney's Acknowledgment

I am counsel for LPPAI, LTD. I have read each of the pages constituting this plea agreement, reviewed them with my client, and discussed fully the provisions of the agreement with my client. These pages accurately and completely sets forth the entire plea agreement. I concur in my client's desire to plead guilty as set forth in this agreement.

8/15/05
Date

J. Triplett Mackintosh, Esq.
Counsel for Defendant LPPAI, LTD.

-7-

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.:** |
| | : | |
| **v.** | : | |
| | : | |
| **LPPAI, LTD.,** | : | |
| **doing business as PA, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

### FACTUAL PROFFER

Had this case gone to trial, the government would have proven beyond a reasonable doubt

that:

1.      **PA, INC.** willfully attempted to export specialty alloy pipes to Iran without

obtaining an export license from the United States Department of the Treasury or any other

agency in the District of Columbia.

2.      **PA, INC.** was a Texas corporation with its principal place of business in Houston,

Texas.  **PA, INC.** had 10 or more employees, including an individual with substantial authority,

that is, **PA, INC. Employee A**, who participated in and condoned the offense.  **PA, INC.**

**Employee A** was the Sales Manager for defendant **PA, INC.** during the conduct alleged in the

Information.  Proclad International Pipelines, Ltd. ("Proclad"), is a British corporation

headquartered in Staffordshire, United Kingdom.

3.      The parties agree that the relevant law is set forth accurately in the Information.

To summarize, the Iranian Transactions Regulations, 31 C.F.R. Part 560, issued pursuant to the

International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 et seq., implemented

Presidential Executive Orders imposing an embargo on Iran.  The Iranian Transactions

1

Regulations prohibit any exportation, reexportation, sale or supply directly or indirectly from the United States or by a United States person, of any goods, technology or services to Iran without prior authorization from the United States Government. 31 C.F.R. § 560.204. They further prohibit the exportation, reexportation, sale or supply to a third country undertaken with knowledge or reason to know that the export is intended for Iran or for use in the production of, commingling with or for incorporation into goods, technology or services for Iran without prior authorization from the United States Government. Id. The United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia, has responsibility for administering the Iranian Transactions Regulations, and is the entity empowered to authorize transactions with Iran during the embargo. Such authorization, if granted, would be in the form of a license.

4.    The Export Administration Regulations, 15 C.F.R. Part 746, promulgated pursuant to the Export Administration Act, 50 U.S.C. App. § 2401 et seq. and kept in force under the International Emergency Economic Powers Act, prohibit exports subject to the Iranian Transactions Regulations without prior authorization from the U.S. Government. 15 C.F.R. § 746.7. Moreover, the Export Administration Regulations set forth certain other violations of the export controls, including aiding and abetting, conspiracy, evasion, acting with knowledge of a violation, attempt, and false statements, 15 C.F.R. §§ 764.2(a)-(h).

5.    Sometime in early 2004, Proclad requested a bid from **PA, INC.** for the sale of specialty alloy pipes. On or about January 30, 2004, **PA, INC. Employee A** and **PA, INC. Employee B**, who was a junior sales associate of defendant **PA, INC.**, prepared a bid for the sale of the pipes to Proclad. On or about February 2, 2004, Proclad accepted the bid of **PA, INC.**,

2

and sent **PA, INC.**, a purchase order for $147,487.28 worth of specialty alloy pipes.   Because

**PA, INC.**, did not have the total amount of the ordered pipes in stock, the parties agreed that **PA,**

**INC.**, would ship the pipes as they became available.  The first shipment was for $33,653.13

worth of the specialty alloy pipes.

   6.  On or about February 2, 2004, Proclad sent an email to **PA INC. Employee B**,

which included shipping paperwork (also known as "shipping marks") to be included on the

shipment.  The shipping marks indicated the description of the goods to be shipped and had

blank spaces to be filled in regarding the weights and dimensions of the shipment.  The shipping

marks also indicated that the pipes were intended for a gas field development project in Iran.

Within a diamond shaped box, the shipping marks indicated the Iranian destination of the

shipment as follows:

I.R. IRAN<br>
NIOC – PARS OIL & GAS<br>
ENI IRAN B.V. SOUTH PARS<br>
PHASE 4 & 5<br>
OFFSHORE FACILITIES<br>
FIELD DEVELOPMENT PROJECT<br>
HYUNDAI ENG & CONTR CO LTD.

**PA, INC. Employee C**, who was a warehouseman and sometime shipping clerk of **PA, INC.**,

filled in the blank spaces regarding the weights and dimensions of the shipment and placed these

shipping marks on the crates that **PA, INC.** used to pack the pipes for shipment.

   7.  On or about February 10, 2004, **PA, INC.** delivered the crates containing the

specialty alloy pipes, along with the shipping marks that indicated the Iranian destination of the

shipment, to NNR Cargo, a freightforwarder designated by Proclad to process the export.

   8.  On or about February 11, 2004, NNR Cargo's air freight manager reviewed the

shipping documentation, including the shipping marks which indicated the Iranian destination,

3

and contacted **PA, INC.** NNR Cargo's air freight manager spoke with **PA, INC. Employee C** and asked him whether **PA, INC.** had a license to ship to Iran. **PA, INC. Employee C** responded that **PA, INC.** did not have an export license. NNR Cargo's air freight manager told **PA, INC. Employee C** that NNR Cargo could not handle the shipment. NNR Cargo's air freight manager indicated that, because of the U.S. embargo against Iran, it could not ship merchandise to Iran in the absence of a license. NNR Cargo's air freight manager indicated that the Iranian embargo covered direct or indirect shipments to Iran. NNR Cargo's air freight manager indicated that NNR Cargo would return the shipment to **PA, INC.**

9.      On or about February 11, 2004, **PA, INC. Employee C** informed **PA, INC. Employee A** about his conversation with NNR Cargo's air freight manager, in particular NNR Cargo's refusal to handle the shipment because of the U.S. embargo against Iran. **PA, INC. Employee A** instructed **PA, INC. Employee B** to contact Proclad and arrange for another freightforwarder to handle the shipment.

10.     On or about February 12, 2004, NNR Cargo's air freight manager spoke again with **PA, INC. Employee C** regarding the shipment. NNR Cargo's air freight manager reiterated that the planned shipment would be in violation of the U.S. embargo against Iran. **PA, INC. Employee C** indicated that **PA, INC.** would likely use a different freight forwarder to handle the shipment. NNR Cargo's air freight manager advised **PA, INC. Employee C** that **PA, INC.** should not go forward with the planned shipment because of its illegality.

11.     On or about February 16, 2004, the shipment was returned from NNR Cargo to **PA, INC.** On or about February 17, 2004, **PA, INC.** delivered the crates containing the specialty alloy pipes, along with shipping documentation, to DFDS Transport, another freightforwarder designated by Proclad to process the export. The shipping documentation included the identical shipping marks, except that the references to Iran were deleted. Within a diamond shaped box, the shipping marks indicated the ultimate destination of

the shipment as follows:

PHASE 4 & 5

OFFSHORE FACILITIES

FIELD DEVELOPMENT PROJECT

HYUNDAI ENG & CONTR CO LTD.

12.     On or about February 18, 2004, agents with the Department of Commerce

detained the shipment at DFDS Transport, thereby preventing its export.

13.     No licenses were applied for or obtained from the United States Department of

Treasury or any other agency in the District of Columbia, for any of the dealings with Iran by **PA,**

**INC.**

14.     In March 2004, **PA, INC.**, converted to a Texas limited partnership under the

name **LPPAI, LTD**.  At the time of the conversion, **LPPAI, LTD.** assumed the name **PA, INC.**,

and continued to do business under that name.  At the time of the conversion, **LPPAI, LTD.**,

assumed all of the liabilities and obligations of **PA, INC.**

> KENNETH L. WAINSTEIN
> United States Attorney
> for the District of Columbia
> D.C. Bar No. 451058

By:     _____

> Jonathan M. Malis
> D.C. Bar # 454548
> Assistant United States Attorney
> United States Attorney's Office
> Transnational/Major Crimes Section
> 555 4th Street, N.W.
> Washington, D.C. 20530
> (202) 305-9665
> Jonathan.M.Malis@usdoj.gov

Dated: August 9, 2005

5

Defendant's Stipulation and Signature

I am the registered agent of LPPAI, LTD., a Texas limited partnership. I am also the Managing Member and President of GPPAI, LLC, a Texas limited liability company which is the sole general partner of LPPAI, LTD. I am authorized by LPPAI, LTD., to act on its behalf in this matter. Additionally, in February 2004, I was the President of PA, Inc., and owned 75% of all outstanding stocks and shares of PA, Inc.

On behalf of LPPAI, LTD., after consulting with its attorneys and pursuant to the plea agreement entered into this day with the United States, I hereby stipulate that the above statement of facts is true and accurate. I further stipulate that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

LPPAI, LTD., a Texas limited partnership

8/12/05
Date

By:   Sandford G. Baum, in his capacity as
      Registered Agent of LPPAI, LTD., acting as the
      Managing Member and President of GPPAI, LLC.,
      acting as the sole general partner of LPPAI, LTD.

Attorney's Acknowledgment

I am counsel for LPPAI, LTD. I have carefully reviewed the above statement of facts with my client. To my knowledge, the decision to stipulate to these facts is an informed and voluntary one.

8/15/05
Date

J. Triplett Mackintosh, Esq.
Counsel for Defendant LPPAI, LTD.

6

UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| LPPAI, Ltd. | ) |
|   d/b/a  P.A. Inc. | ) |
| 6626 Gulf Freeway | ) |
| Houston, Texas 77087 | ) |
| | ) |
|          Respondent | ) |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and between LPPAI, Ltd. d/b/a

P.A. Inc. ("LPPAI"), and the Bureau of Industry and Security, U.S. Department of Commerce

("BIS") (collectively referred to as "Parties"), pursuant to Section 766.18(a) of the Export

Administration Regulations (currently codified at 15 C.F.R. Parts 730-774 (2005))

("Regulations"),[1] issued pursuant to the Export Administration Act of 1979, as amended (50

U.S.C. app. §§ 2401-2420 (2000)) ("Act"),[2]

---

[1] The violations charged occurred in 2004.  The Regulations governing the violations at issue are found in the 2004 versions of the Code of Federal Regulations (15 C.F.R. Parts 730-774 (2004)).  The 2005 Regulations establish the procedures that apply to this matter.

[2] From August 21, 1994 through November 12, 2000, the Act was in lapse.  During that period, the President, through Executive Order 12924, which had been extended by successive Presidential Notices, the last of which was August 3, 2000 (3 C.F.R., 2000 Comp. 397 (2001)), continued the Regulations in effect under the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 - 1706 (2000)) ("IEEPA").  On November 13, 2000, the Act was reauthorized and it remained in effect through August 20, 2001.  Since August 21, 2001, the Act has been in lapse and the President, through Executive Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp. 783 (2002)), as extended by the Notice of August 2, 2005, (70 Fed. Reg. 45273 (August 5, 2005)), has continued the Regulations in effect under IEEPA.

Settlement Agreement
LPPAI, Ltd.
Page 3 of 8

Regulations, to Iran without prior authorization from the Office of Foreign Assets

Control, U.S. Department of the Treasury as required by Section 746.7 of the

Regulations.

3.  *One Violation of 15 C.F.R. § 764.2(e) - Transporting Nickel Alloy Pipes with*

   *Knowledge of a Violation of the Regulations:* With respect to the attempted

   export described above, LPPAI transported nickel alloy pipes with the knowledge

   that a violation of the Regulations was about to occur or was intended to occur in

   connection with the nickel alloy pipes. At all times relevant hereto, LPPAI knew

   or had reason to know that the nickel alloy pipes in question required

   authorization from the Office of Foreign Assets Control, U.S. Department of the

   Treasury, and that the required authorization had not been obtained. LPPAI knew

   that authorization was required prior exporting the nickel alloy pipes because it

   had been informed by a freight forwarder of the requirement in an earlier attempt

   to export the pipes to Iran.

4.  *One Violation of 15 C.F.R. § 764.2(h) - Taking Actions with the Intent of Evading*

   *the Regulations:* With respect to the attempted export described above, LPPAI

   took actions with the intent of evading the Regulations. Specifically, LPPAI

   altered the markings on the crate of nickel alloy pipes that it was attempting to

   export, and removed markings noting that the nickel alloy pipes were being

   exported to Iran. LPPAI altered the markings in an attempt to conceal the true

   ultimate destination of the items.

- 11010.2

Settlement Agreement
LPPAI, Ltd.
Page 2 of 8

WHEREAS, BIS has notified LPPAI of its intention to initiate an administrative

proceeding against LPPAI, pursuant to the Act and the Regulation;

WHEREAS, BIS has issued a proposed charging letter to LPPAI that alleged that LPPAI

committed five violations of the Regulations, specifically:

1.      *One Violation of 15 C.F.R. §764.2(d) - Conspiracy to Violate the Regulations:*
        Beginning on or about February 11, 2004 and continuing through on or about
        February 18, 2004, LPPAI conspired and acted in concert with others, known and
        unknown, to do or bring about an act that violates the Regulations.  The purpose
        of the conspiracy was to export nickel alloy pipes, items subject to the
        Regulations and to the Iranian Transactions Regulations,[3] from the United States
        to Iran without prior authorization from the Office of Foreign Assets Control, U.S.
        Department of the Treasury, as required by Section 746.7 of the Regulations.
        LPPAI and its co-conspirators took acts in furtherance of the conspiracy by
        attempting the export of nickel alloy pipes from the United States through the
        United Kingdom to Iran without the required authorization.

2.      *One Violation of 15 C.F.R. § 764.2(c) - Attempted Export of Nickel Alloy Pipes to
        Iran without the Required Authorization:*  On or about February 18, 2004, LPPAI
        attempted a violation of the Regulations by attempting to export nickel alloy
        pipes, items subject to the Regulations and to the Iranian Transactions

_____

[3] 31 C.F.R. Part 360 (2005).

- 11010.2

Settlement Agreement
LPPAI, Ltd.
Page 4 of 8

5. *One Violation of 15 C.F.R. § 764.2(c) - Attempted False Statement on a Shipper's Export Declaration Concerning Ultimate Consignee:* With respect to the attempted export described above, LPPAI attempted a violation of the Regulations by authorizing the filing of a Shipper's Export Declaration showing the ultimate consignee as ProClad Int. Pipelines Ltd., of Staffordshire, United Kingdom. This statement was false because the ultimate consignee was the Hyundai Engineering & Construction Co Ltd, of Dubai, the United Arab Emirates, for use in the country of ultimate destination, Iran.

WHEREAS, LPPAI has reviewed the proposed charging letter and is aware of the allegations made against it and the administrative sanctions which could be imposed against it if the allegations are found to be true;

WHEREAS, LPPAI fully understands the terms of this Agreement and the Order ("Order") that the Assistant Secretary of Commerce for Export Enforcement will issue if she approves this Agreement as the final resolution of this matter;

WHEREAS, LPPAI enters into this Agreement voluntarily and with full knowledge of its rights;

WHEREAS, LPPAI states that no promises or representations have been made to it other than the agreements and considerations herein expressed;

WHEREAS, LPPAI neither admits nor denies the allegations contained in the proposed charging letter;

- 11010.2

Settlement Agreement
LPPAI, Ltd.
Page 5 of 8

WHEREAS, LPPAI wishes to settle and dispose of all matters alleged in the proposed

charging letter by entering into this Agreement; and

WHEREAS, LPPAI agrees to be bound by the Order, if entered;

NOW THEREFORE, the Parties hereby agree as follows:

1.  BIS has jurisdiction over LPPAI, under the Regulations, in connection with the

matters alleged in the proposed charging letter.

2.  The following sanctions shall be imposed against LPPAI in complete settlement of the

violations of the Regulations set forth in the proposed charging letter:

a.      LPPAI shall be assessed a civil penalty in the amount of $50,000, of which

        $25,000 shall be paid to the U.S. Department of Commerce within 30 days from

        the date of entry of this Order; and the remaining $25,000 shall be paid to the U.S.

        Department of Commerce not later than June 30, 2006.  Payment shall be made in

        the manner specified in the attached instructions.

b.      The timely payment of the civil penalty agreed to in paragraph 2.a. is hereby made

        a condition to the granting, restoration, or continuing validity of any export

        license, License Exception, permission, or privilege granted, or to be granted, to

        LPPAI.  Failure to make timely payment of the civil penalty set forth above may

        result in the denial of all of LPPAI's export privileges for a period of one year

        from the date of imposition of the penalty.

c.      For a period five years from the date of entry of the Order, LPPAI, its successors

        or assigns, and, when acting for or on behalf of LPPAI, its officers,

        representatives, agents, or employees ("Denied Person") may not participate,

- 11010.2

Settlement Agreement
LPPAI, Ltd.
Page 6 of 8

directly or indirectly, in any way in any transaction involving any commodity,

software or technology (hereinafter collectively referred to as "item") exported or

to be exported from the United States that is subject to the Regulations, or in any

other activity subject to the Regulations, including, but not limited to:

i.      Applying for, obtaining, or using any license, License Exception, or export

        control document;

ii.     Carrying on negotiations concerning, or ordering, buying, receiving, using,

        selling, delivering, storing, disposing of, forwarding, transporting,

        financing, or otherwise servicing in any way, any transaction involving any

        item exported or to be exported from the United States that is subject to

        the Regulations, or in any other activity subject to the Regulations; or

iii.    Benefitting in any way from any transaction involving any item exported

        or to be exported from the United States that is subject to the Regulations,

        or in any other activity subject to the Regulations.

d.      BIS agrees that, as authorized by Section 766.18 (c) of the Regulations, the five

        year denial period set forth in paragraph 2.c. shall be suspended in its entirety for a

        period of five years from the entry of the appropriate Order, and shall thereafter be

        waived, provided that during the period of suspension, LPPAI has committed no

        violation of the Act or any regulation, order or license issued thereunder.

3. Subject to the approval of this Agreement pursuant to paragraph 8 hereof, LPPAI

hereby waives all rights to further procedural steps in this matter (except with respect to any

alleged violations of this Agreement or the Order, if entered), including, without limitation, any

- 11010.2

Settlement Agreement
LPPAI, Ltd.
Page 7 of 8

right to: (a) an administrative hearing regarding the allegations in the proposed charging letter;

(b) request a refund of any civil penalty paid pursuant to this Agreement and the Order, if

entered; (c) request any relief from the Order, if entered, including without limitation relief from

the terms of a denial order under 15 C.F.R. § 764.3(a)(2); and (d) seek judicial review or

otherwise contest the validity of this Agreement or the Order, if entered.

4.  Upon entry of the Order, BIS will not initiate any further administrative proceeding

against LPPAI in connection with any violation of the Act or the Regulations arising out of the

transactions identified in the proposed charging letter.

5.  BIS will make the proposed charging letter, this Agreement, and the Order, if entered,

available to the public.

6.  This Agreement is for settlement purposes only.  Therefore, if this Agreement is not

accepted and the Order is not issued by the Assistant Secretary of Commerce for Export

Enforcement pursuant to Section 766.18(a) of the Regulations, no Party may use this Agreement

in any administrative or judicial proceeding and the Parties shall not be bound by the terms

contained in this Agreement in any subsequent administrative or judicial proceeding.

7.  No agreement, understanding, representation or interpretation not contained in this

Agreement may be used to vary or otherwise affect the terms of this Agreement or the Order, if

entered, nor shall this Agreement serve to bind, constrain, or otherwise limit any action by any

other agency or department of the U.S. Government with respect to the facts and circumstances

addressed herein.

- 11010.2

Settlement Agreement
LPPAI, Ltd.
Page 8 of 8

8.  This Agreement shall become binding on BIS only if the Assistant Secretary of

Commerce for Export Enforcement approves it by entering the Order, which will have the same

force and effect as a decision and order issued after a full administrative hearing on the record.

9.  Each signatory affirms that he has authority to enter into this Settlement Agreement

and to bind his respective party to the terms and conditions set forth herein.


BUREAU OF INDUSTRY AND SECURITY          LPPAI, LTD.
U.S. DEPARTMENT OF COMMERCE


_____          _____
Michael D. Turner                        Sandford Baum
Director                                 Registered Agent
Office of Export Enforcement



Date:  _8/18/2005_                       Date:  _8/12/05_



- 11010.2

UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

In the Matter of:                                    )

LPPAI, Ltd.
  d/b/a  P.A. Inc.                                  )
6626 Gulf Freeway                                    )
Houston, Texas 77087                                 )
                                                     )
_____Respondent_____)

ORDER RELATING TO LPPAI, LTD..

The Bureau of Industry and Security, U.S. Department of Commerce ("BIS") has notified

LPPAI, Ltd., of its intention to initiate an administrative proceeding against it pursuant to Section

766.3 of the Export Administration Regulations (currently codified at 15 C.F.R. Parts 730-774

(2005)) ("Regulations"),[1] and Section 13(c) of the Export Administration Act of 1979, as

amended (50 U.S.C. app. §§ 2401-2420 (2000)) ("Act"),[2] by issuing a proposed charging letter to

LPPAI, Ltd., d/b/a P.A. Inc. (LPPAI) that alleged that it committed five violations of the

Regulations.  Specifically, the charges are:

_____

[1] The charged violations occurred in 2004.  The Regulations governing the violations at issue
are found in the 2004 versions of the Code of Federal Regulations (15 C.F.R. Parts 730-774
(2004)).  The 2005 Regulations establish the procedures that apply to this matter.

[2] From August 21, 1994 through November 12, 2000, the Act was in lapse.  During that
period, the President, through Executive Order 12924, which had been extended by successive
Presidential Notices, the last of which was issued on August 3, 2000 (3 C.F.R., 2000 Comp. 397
(2001)), continued the Regulations in effect under the International Emergency Economic
Powers Act (50 U.S.C. §§1701 - 1706 (2000)) ("IEEPA").  On November 13, 2000, the Act was
reauthorized and it remained in effect through August 20, 2001. Since August 21, 2001, the Act
has been in lapse and the President, through Executive Order 13222 of August 17, 2001 (3
C.F.R., 2001 Comp. 783 (2002)), as extended by the Notice of August 2, 2005, (70 Fed. Reg.
45273 (August 5, 2005)), has continued the Regulations in effect under IEEPA.

1.    *One Violation of 15 C.F.R. §764.2(d) - Conspiracy to Violate the Regulations:*
Beginning on or about February 11, 2004 and continuing through on or about
February 18, 2004, LPPAI conspired and acted in concert with others, known and
unknown, to do or bring about an act that violates the Regulations.  The purpose
of the conspiracy was to export nickel alloy pipes, items subject to the
Regulations and to the Iranian Transactions Regulations,[3] from the United States
to Iran without prior authorization from the Office of Foreign Assets Control, U.S.
Department of the Treasury, as required by Section 746.7 of the Regulations.
LPPAI and its co-conspirators took acts in furtherance of the conspiracy by
attempting the export of nickel alloy pipes from the United States through the
United Kingdom to Iran without the required authorization.

2.    *One Violation of 15 C.F.R. § 764.2(c) - Attempted Export of Nickel Alloy Pipes to
Iran without the Required Authorization:*  On or about February 18, 2004, LPPAI
attempted a violation of the Regulations by attempting to export nickel alloy
pipes, items subject to the Regulations and to the Iranian Transactions
Regulations, to Iran without prior authorization from the Office of Foreign Assets
Control, U.S. Department of the Treasury as required by Section 746.7 of the
Regulations.

3.    *One Violation of 15 C.F.R. § 764.2(e) - Transporting Nickel Alloy Pipes with
Knowledge of a Violation of the Regulations:*  With respect to the attempted
export described above, LPPAI transported nickel alloy pipes with the knowled_
that a violation of the Regulations was about to occur or was intended to occur in
connection with the nickel alloy pipes.  At all times relevant hereto, LPPAI knew

---

[3] 31 C.F.R. Part 360 (2005).

Order
LPPAI, Ltd.
Page 2 of 7                                                                            - 11009.2

or had reason to know that the nickel alloy pipes in question required authorization from the Office of Foreign Assets Control, U.S. Department of the Treasury, and that the required authorization had not been obtained. LPPAI knew that authorization was required prior exporting the nickel alloy pipes because it had been informed by a freight forwarder of the requirement in an earlier attempt to export the pipes to Iran.

4.    *One Violation of 15 C.F.R. § 764.2(h) - Taking Actions with the Intent of Evading the Regulations:* With respect to the attempted export described above, LPPAI took actions with the intent of evading the Regulations. Specifically, LPPAI altered the markings on the crate of nickel alloy pipes that it was attempting to export, and removed markings noting that the nickel alloy pipes were being exported to Iran. LPPAI altered the markings in an attempt to conceal the true ultimate destination of the items.

5.    *One Violation of 15 C.F.R. § 764.2(c) - Attempted False Statement on a Shipper's Export Declaration Concerning Ultimate Consignee:* With respect to the attempted export described above, LPPAI attempted a violation of the Regulation by authorizing the filing of a Shipper's Export Declaration showing the ultimate consignee as ProClad Int. Pipelines Ltd., of Staffordshire, United Kingdom. This statement was false because the ultimate consignee was the Hyundai Engineering & Construction Co Ltd, of Dubai, the United Arab Emirates, for use in the country of ultimate destination, Iran.

WHEREAS, BIS and LPPAI have entered into a Settlement Agreement pursuant to Section 766.18(a) of the Regulations whereby they agreed to settle this matter in accordance with the terms and conditions set forth therein, and

WHEREAS, I have approved the terms of such Settlement Agreement;

IT IS THEREFORE ORDERED:

FIRST, that a civil penalty of $50,000 is assessed against LPPAI, of which $25,000 shall be paid to the U.S. Department of Commerce within 30 days from the date of entry of this Order; and the remaining $25,000 shall be paid to the U.S. Department of Commerce not later than June 30, 2006. Payment shall be made in the manner specified in the attached instructions.

SECOND, that, pursuant to the Debt Collection Act of 1982, as amended (31 U.S.C. §§ 3701-3720E (2000)), the civil penalty owed under this Order accrues interest as more fully described in the attached Notice, and, if payment is not made by the due date specified herein, LPPAI will be assessed, in addition to the full amount of the civil penalty and interest, a penalty charge and an administrative charge, as more fully described in the attached Notice.

THIRD, that the timely payment of the civil penalty set forth above is hereby made a condition to the granting, restoration, or continuing validity of any export license, license exception, permission, or privilege granted, or to be granted, to LPPAI. Accordingly, if LPPAI should fail to pay the civil penalty in a timely manner, the undersigned may enter an Order denying all of LPPAI's export privileges for a period of one year from the date of entry of this Order.

FOURTH, for a period five years from the date of entry of the Order, LPPAI, 6626 Gulf Freeway, Houston, Texas 77087, its successors or assigns, and when acting for or on behalf of LPPAI, its officers, representatives, agents, or employees ("Denied Person") may not participate, directly or indirectly, in any way in any transaction involving any commodity, software or technology (hereinafter collectively referred to as "item") exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations, including, but not limited to:

Order
LPPAI, Ltd.
Page 4 of 7

11009.2

A.   Applying for, obtaining, or using any license, License Exception, or export control document;

B.   Carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, transporting, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations; or

C.   Benefitting in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations.

FIFTH, that no person may, directly or indirectly, do any of the following:

A.   Export or reexport to or on behalf of the Denied Person any item subject to the Regulations;

B.   Take any action that facilitates the acquisition or attempted acquisition by the Denied Person of the ownership, possession, or control of any item subject to the Regulations that has been or will be exported from the United States, including financing or other support activities related to a transaction whereby the Denied Person acquires or attempts to acquire such ownership, possession or control;

C.   Take any action to acquire from or to facilitate the acquisition or attempted acquisition from the Denied Person of any item subject to the Regulations that has been exported from the United States;

D.   Obtain from the Denied Person in the United States any item subject to the Regulations with knowledge or reason to know that the item will be, or is intended to be, exported from the United States; or

E.    Engage in any transaction to service any item subject to the Regulations that has been or will be exported from the United States and which is owned, possessed c controlled by the Denied Person, or service any item, of whatever origin, that is owned, possessed or controlled by the Denied Person if such service involves the use of any item subject to the Regulations that has been or will be exported from the United States.  For purposes of this paragraph, servicing means installation, maintenance, repair, modification or testing.

SIXTH, that, after notice and opportunity for comment as provided in Section 766.23 of the Regulations, any person, firm, corporation, or business organization related to LPPAI by affiliation, ownership, control, or position of responsibility in the conduct of trade or related services may also be made subject to the provisions of the Order.

SEVENTH, that this Order does not prohibit any export, reexport, or other transaction subject to the Regulations where the only items involved that are subject to the Regulations are the foreign-produced direct product of U.S.-origin technology.

EIGHTH, that, as authorized by Section 766.18(c) of the Regulations, the denial period set forth above shall be suspended in its entirety for five years from the date of this Order, and shall thereafter be waived, provided that during the period of suspension, LPPAI has committed no violation of the Act or any regulation, order or license issued thereunder.

NINTH, that the proposed charging letter, the Settlement Agreement, and this Order shall be made available to the public.

This Order, which constitutes the final agency action in this matter, is effective immediately.

Wendy L Wysong

Wendy L. Wysong
Acting Assistant Secretary of Commerce
for Export Enforcement

Entered this 19th day of August 2005.

Order
LPPAI, Ltd.
Page 7 of 7

- 11009.2

### ACTION OF THE SOLE GENERAL PARTNER OF LPPAI, LTD.

The undersigned, being the sole general partner (the "General Partner") of LPPAI, LTD. a Texas limited partnership (the "Partnership"), hereby consents to and adopts the following resolutions by this written consent, as authorized by and pursuant to the Texas Business Organizations Code (the "Code"):

WHEREAS, the Partnership has negotiated a global settlement agreement (the "Settlement Agreement") with the U.S. Department of Justice in relation to the investigation by the U.S. Department of Justice and the Bureau of Industry and Security of the Commerce Department of certain export transactions entered into by the Partnership in February 2004, while doing business as P.A, Inc., a Texas corporation;

WHEREAS, the General Partner believes it is in the best interest of the Partnership to enter into the Settlement Agreement;

THEREFORE, IT IS RESOLVED, that Sandford G. Baum, sole member of the General Partner, acting for and on behalf of the General Partner, is hereby authorized and empowered to execute on behalf of the Partnership any agreements, instruments or documents required to enter into the Settlement Agreement.

RESOLVED, that the engagement of J. Triplett Mackintosh, outside legal counsel for the Partnership, to negotiate the Settlement Agreement on behalf of the Partnership, is ratified, confirmed and approved.

RESOLVED, that any and all agreements, instruments and documents previously executed and actions previously done to carry out the purposes of these resolutions are ratified, confirmed and approved as the act or acts of the Partnership.

BE IT FURTHER RESOLVED, that any and all acts authorized pursuant to these resolutions and performed prior to the passage of these resolutions are hereby ratified and approved.

IN WITNESS WHEREOF, the undersigned has executed this consent as of August 12, 2005.

> GPPAI, LLC, a Texas limited liability company
>
> By: Sandford G. Baum
> Its: Sole Member

3409763_1.DOC